FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

97 NOV -4  PM 3:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| ANTHONY CULVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CV 96-PT-2478-M |
| ) | |
| THE HEIL COMPANY, ) | ENTERED |
| ) | |
| Defendant. ) | NOV 4 – 1997 |

Memorandum Opinion

This cause comes on to be heard on a motion for summary judgment filed by the defendant, the Heil Company ("Heil"), on August 29, 1997. In its motion, the defendant contends that no genuine issue of material fact supports the claims of the plaintiff, Anthony Culver ("Culver"), (1) that he was discharged and subjected to harassment in violation of the Americans with Disabilities Act; (2) that he was terminated in violation of the State of Alabama's statute prohibiting retaliatory discharge for the filing of a workers' compensation benefits; and (3) that his employment contract with the defendant was breached by his termination.

On a motion for summary judgment, the court must assess the proof to ascertain whether there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a

matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the grounds for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes prove the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing the presence of a genuine issue for trial. Celotex, 477 U.S. at 324. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . " in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In resolving whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). Considering the above, this court must examine the evidence to determine the existence of genuine issues of material fact as to the various claims.

Facts

The defendant Heil is in the business of making garbage trucks for municipalities, waste removal contractors and other transporters of waste. The plaintiff Culver was an employee of Heil, hired by it in 1989 to work at its manufacturing plant in Fort Payne, Alabama. At the time of his first back injury, the plaintiff was a receiving clerk helper for

Heil.[1]  As receiving clerk helper, the plaintiff assisted in the unloading of trucks, the contents of which are the various parts used to build the bodies of the garbage trucks manufactured by the defendant.  Apparently, these parts, some of which weigh in excess of one-hundred pounds, must be carried by the receiving clerk helper from the delivery trucks to organization bins and shelves for storage and later assemblage of Heil's garbage trucks.

The job demands of the receiving clerk helper are stated in the written job description as "Lifting — 130-150 lbs. lifted to shelves from 8.5"-7'8" high," and were stated by Shirley Payne, a human resource manager at Heil, as requiring of the plaintiff

> . . . on a "frequent" basis, 34%-66% of the time: pushing; pulling; floor to knuckle lift; knuckle to shoulder lift; shoulder to overhead lift; carrying; standing; walking; climbing stairs; climbing ladders; balancing; handling; fingering; talking[, and] . . . on an "occasional" basis, 1-33% of the time: sitting; sustained bending; overhead reaching; crawling; squatting (repeated); kneeling; stooping (repeated bending); crouching; feeling; hearing; color vision.

Affidavit of Shirley Payne at 4.

In August 1993, the plaintiff complained to the company doctor of an aggravation in his left shoulder and arm.  He was referred to an orthopedic surgeon, Dr. William Haller, who, suggesting that the plaintiff suffered from a herniated disc with nerve irritation, referred the plaintiff to a neurosurgeon.  In September 1993, the plaintiff received a cervical diskectomy fusion at the C6-7 disk interspace.

The plaintiff remained unable to work until January 3, 1994 because of medical restrictions.  During this time, he was proceeding with a workers' compensation suit filed in the Circuit Court of DeKalb County on October 10, 1993.  In that suit, Heil responded that the injury was not work related and that insufficient notice had been given it.  Apparently, the plaintiff eventually won his suit for benefits.

The plaintiff was released to return to work on January 3, 1994, inhibited by a thirty pound lifting restriction imposed by Dr. Haller, who had become Culver's treating physician.  Upon his arrival at Heil, however, the plaintiff was notified that no jobs existed for him to

---

[1] Previously, the plaintiff had been employed by Heil as a parts technician, fabricator and low-level management B-Coordinator, overseeing the operation of fabrication machines.

perform. Culver states that he was told by the defendant not to return unless he was "100% percent."[2] At the time, Culver had yet to receive any workers' compensation or unemployment benefits. The plaintiff approached Dr. Haller about removing the thirty pound lifting restriction. Dr. Haller removed the restriction and issued Culver a return to work slip bearing no limitations. The plaintiff returned to Heil and temporarily worked in his job as a receiving clerk helper.

Almost three weeks after his return to Heil, Culver re-injured his back while attempting to remove two hundred parts, each weighing between five and six pounds, from one bin and into another. At its occurrence, the plaintiff reported the injury. He was taken to the company physician, who again instructed the plaintiff to see his orthopedic surgeon, Dr. Haller. On February 24, 1994, the plaintiff was examined by Dr. Haller, who determined that the plaintiff suffered a cervical disk disease with nerve irritation at the C5-6 disk interface. The new disk degeneration was, stated Dr. Haller, unrelated to any upset of the earlier back surgery.

Dr. Haller determined that surgery was too extreme a measure for the plaintiff's newest problem and decided that the plaintiff could return to work with anti-inflammatory medication and a ten pound lifting restriction. The surgeon allegedly told the plaintiff that he was to work at the lower lifting levels for a while and incrementally increase the amount that he lifted.[3] The plaintiff returned to work with the restriction slip listing the ten pound limitation.

Culver, upon his return to Heil, was placed on "light duty" work. For him, "light duty" work was essentially clerical. The plaintiff aided with time cards, made blue prints, filed purchase orders and performed similar work. Culver claims that while he was on light duty, he "caught a lot of flak" from other employees about receiving full salary while performing lighter work than employees not suffering any impairments. According to the plaintiff, employees receiving "light duty" work were commonly referred to as the "walking wounded."

---

[2] The defendant, in a motion to strike the plaintiff's statement of facts, complains that the "100% percent" statement by the plaintiff mischaracterizes Culver's deposition testimony. Reading the testimony, the court does not see this.

[3] Eventually, Dr. Haller determined that it would be for the best if the plaintiff were permanently limited in his lifting to ten pounds with occasional lifting of heavier objects.

-4-

Those on "light duty" work were allegedly targets of innuendo that the moment "that they stepped out of line they were going to be gone."

In either April or May of 1994, the plaintiff allegedly bid for and was awarded the position of tool crib attendant/purchaser. In that position, the plaintiff's duties included reordering parts from requisitions, checking prices, placing orders, putting orders into the computer, filing requisitions and determining whether the requested parts were received by Heil. The plaintiff's responsibilities as a tool crib attendant/purchaser also included preparation of an in-house vendor position that would take over many of the tasks then carried out the toll crib attendant. After the tasks were transferred to the in-house vendor, the remaining tasks would revert to the maintenance supervisor to be performed.

In June 1994, Culver was offered a position as a grinder. A grinder applies a tool called a "grinder" to smooth out places where steel has been welded together. In his third day of work as a grinder, the plaintiff began to complain of pain resulting from his having to regularly lift eleven to twelve pounds, the weight of the grinder and the air hose attached to it. The plaintiff also contends that the grinding job was used to punish him for filing his workers' compensation suit. The plaintiff was returned to "light duty" work.

On May 20, 1995, Culver was informed that, as of May 31, 1995, he would no longer be in the employ of Heil, as it had decided to eliminate all "light duty" jobs. The plaintiff was also informed that he would receive no temporary total disability for his injury upon his dismissal. Purportedly, subsequent to the plaintiff's termination, Heil retained at least one more employee on "light duty" work in the Fort Payne facility.

According to Heil, Culver has recall rights for up to three years after his being laid off by it. If, after his layoff, a position comes available for which the employee has seniority, an employee with recall rights will allegedly be placed in the position. Heil posts all positions on which employees (present and past) might bid inside of the plant and does not otherwise inform any laid off employees of available positions. Unfortunately, states Heil, no positions for which Culver was qualified and able to perform have been made available. Culver disputes this, claiming that, in fact, a number of positions have opened since his layoff, including utility jobs, general labor positions, clerk jobs, technician serviceperson, data entry person and truck

operator.

## Contentions & Analysis

The plaintiff claims that Heil discriminated against him and harassed him in violation of the Americans with Disabilities Act, retaliated against him for filing a claim for workers' compensation and breached its employment contract with him. The court will consider each argument in turn.

AMERICANS WITH DISABILITIES ACT CLAIM(S).

Culver attempts to state a standard disability discrimination claim and a more novel claim that he was subjected to "disability harassment." The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA a terminated employee is entitled to relief if he or she can show that:

> that (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability. [Morisky v. Broward County, 80 F.3d 445, 447 (11th Cir.1996).] A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The plaintiff retains at all times the burden of persuading the jury that reasonable accommodations were available. Moses v. American Nonwovens, Inc., 97 F.3d 446, 447 (11th Cir.1996).

Holbrook v. City of Alpharetta, 112 F.3d 1522 (11th Cir. 1997). In cases in which "reasonable accommodation" is an issue, a plaintiff proving the elements of his claim to the trier of fact's satisfaction is entitled to prevail unless the defendant can prove that a reasonable accommodation would present an "undue hardship" for the employer to implement. Id.

The defendant first contends that the plaintiff cannot demonstrate that he was disabled. The statute defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such impairment; or
> (C) being regarded as having such an impairment.

Id. § 12102(2). In the present case, the plaintiff claims to have been "disabled." Heil admits that the plaintiff suffers from a physical impairment, a back condition limiting his ability to lift objects over ten pounds, but argues that the ten pound lifting restriction does not constitute a "substantial limitation" on a major life activity, his ability to work.

The plaintiff answers that his impairment severely limits, in addition to his capacity to work, his ability to engage in the everyday task of lifting and carrying objects about.

> The ADA does not define "substantially limits" and "major life activities". But, regulations promulgated by the EEOC under the ADA define both. "Major life activities" is so defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working". 29 C.F.R. S 1630.2(i). "Other major life activities could include lifting, reaching, sitting, or standing." Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 n. 7 (5th Cir.1995).

Ray v. Gliden Co., 85 F.3d 227, 229 (5th Cir. 1996). It is clear that the plaintiff's inability to lift more than ten pounds presented a constraint on the major life activity of lifting. At issue is whether that constraint was so severe as to substantially limit the major life activity.

> In general, "substantially limited" refers to the inability to perform a major life activity as compared to the average person in the general population or a significant restriction "as to the condition, manner, or duration" under which an individual can perform the particular activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii).

Thompson v. Holy Family Hospital, 121 F.3d 537, 539-40 (9th Cir. 1997). In determining whether the plaintiff is substantially limited in a major life activity "other than working, [the court] look[s] to whether that person can perform the normal activities of daily living." Ray v. Gliden Co., 85 F.3d at 229. The inability to lift twenty-five pounds or greater has been found by most circuits not to be so significant an impairment as to prevent a plaintiff from performing the daily activities of normal living. See Thompson v. Holy Family Hospital, 121 F.3d at 540; Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 349 (4th Cir.1996), cert. denied, --- U.S. ----, 117 S. Ct. 1844 (1997); Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1319 (8th Cir.1996); Ray v. Glidden Co., 85 F.3d at 229 (5th Cir.1996) (holding that a plaintiff who could lift and reach so long as he avoided heavy

lifting was not substantially impaired).

In his brief, the plaintiff states that:

> The last time Mr. Culver was treated by Dr. Haller was on May 17, 1995. At that time, Dr. Haller made the recommendation that Mr. Culver limit lifting as much as possible on a permanent basis. Dr. Haller noted that Mr. Culver had a history of cervical disk disease and recommended that he be retrained if heavy lifting was the only job available to him. Dr. Haller testified that when he issued the last restriction to Mr. Culver, he believed that Mr. Culver could lift 20 to 30 pounds on an occasional basis. When Dr. Haller said eliminate heavy lifting, he was thinking in terms of 50 to 60 pounds. He also believed that Mr. Culver could lift up to 50 pounds on an infrequent basis. . . .

Plaintiff's Response to Defendant's Motion for Summary Judgment at 6-7. According to Dr. Haller, the plaintiff can regularly carry about objects of less than ten pounds and can occasionally lift up to fifty pounds. Most lifting activities in the plaintiff's life will not be limited by his impairment, as most objects to be lifted — for example, cups, plates, books, small pets, tools and coffee pots — weigh less than ten pounds. Few objects to be dealt with on a daily basis weigh more than ten pounds. That the plaintiff should lift heavier objects would be an infrequent demand within the plaintiff's restrictions. The limitation on the plaintiff's ability to lift is not substantial.

The plaintiff's cervical disk disease might also be considered disabling if it substantially limits his ability to work. The ADA regulations include "working" as a "major life activity" that, if substantially limited or regarded as substantially limited by an impairment, is a disability under the ADA. 29 C.F.R. § 1630.2(i). Nevertheless, the term "working" does not mean working at a specific job of that employee's preference. See Maulding v. Sullivan, 961 F.2d 694, 698 (8th Cir. 1992), cert. denied, 507 U.S. 910 (1993).

> When individuals claim that they are substantially limited in the major life activity of "working," their condition "must significantly restrict [their] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training skills and abilities." [Pritchard v. Southern Co. Services, 92 F.3d 1130, 1133 (11th Cir.)] (internal quotations and citations omitted). "An impairment does not substantially limit the ability to work merely because it prevents a person from performing either a particular specialized job or a narrow range of jobs. Nor does the inability to perform a single, particular job . . . constitute a substantial limitation in the major life activity of working." Pritchard, 92 F.3d at 1133 (internal quotations and citations omitted).

Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997). No trier of fact could reasonably find Culver's ten pound lifting limitation to be a substantial limitation of an ability to work. The plaintiff presently works as a creeler, another physical labor position. Perhaps the plaintiff, in comparison to other physically strong individuals, is less capable of performing in jobs that require heavy lifting on a regular basis. But not all physical labor jobs make such weighty demands on those filling them.

The plaintiff presents the testimony of Claude Peacock ("Peacock"), a vocational expert utilized in his workers' compensation case, to support a contention that he is limited in his activities to sedentary work. This testimony conflicts with the testimony offered by Dr. Haller and presented by the plaintiff. Disregarding the internal conflicts of the plaintiff's case, the court will, for the moment, assume that a reasonable trier of fact could find the testimony of Peacock capable of supporting the conclusion that the plaintiff suffered a sedentary work limitation.[4] Conceivably, because of the sedentary work limitation, the plaintiff could be deemed disabled. Even if, however, the plaintiff suffers from a sedentary work limitation, the plaintiff still must demonstrate that he is a "qualified individual."

The burden of proof is on the employee to demonstrate that he is a qualified individual. Morisky v. Broward County, 80 F.3d 445, 447 (11th Cir. 1996). The plaintiff has the initial burden of demonstrating what the essential functions of the job are and whether those functions can be performed with or without reasonable accommodation. Initially, therefore, the employee is required to characterize which functions of a position are essential and which are inessential. The employer can dispute this characterization, however, by offering its description of the essential and inessential functions of the position. Holbrook, 1997 WL 228697 at *2. In a contest between the parties over whether a particular function of a position is essential or not, the plaintiff carries the ultimate burden of proof. The plaintiff can discharge this burden by presenting a description of the job prepared "before advertising or

---

[4] The court is, however, skeptical of Peacock's statement of the plaintiff's limitations. The plaintiff's present employment as a creeler requires him to lift from fifteen to eighteen pounds on a consistent basis and works over forty hours a week averaging as much as twelve hours of overtime in a week. Such activities are plainly at odds with the sedentary work limitation ascribed to plaintiff by Peacock.

interviewing applicants for the job," 42 U.S.C. § 12111(8); through showing that the function is unrelated to the reason for the position; by demonstrating that numerous other employees were available to perform the job function; and/or by putting on evidence that the function was not so specialized that the employee was hired for his or her expertise in performing that function. See Holbrook, 1997 WL 228697 at *2. See also 29 C.F.R. § 1630.2(n)(2)(i)-(iii)(y). A plaintiff who manages to characterize his disability as only affecting inessential functions of his job has proven that he is a qualified individual for his position. If, however, a function of the employment is proven essential, the plaintiff is still a qualified individual if he can demonstrate either that he can adequately perform that function without any accommodation or that with reasonable accommodation he can perform the job function. Willis v. Conopco, Inc., 108 F.3d 282, 286 (11th Cir. 1997).

  The plaintiff first argues that, after his layoff, Heil improperly failed to consider him for the utility jobs, general labor positions, clerk jobs, technician service positions and data entry jobs. The essential functions of none of these positions have been elaborated in any degree by the plaintiff, as is required. Assuming that the plaintiff was capable of performing in these positions, he never bid for any of these positions and his recall rights did not give him automatic advancement into any of the positions.

  The plaintiff contends that Heil had a duty to reassign him to one of these positions as a reasonable accommodation. Reassignment is an available option if, at the time at which the employee suffers the limiting disability, an equivalent position exists. However, if at the time the employee is laid off (so long as it is for a valid reason) no equivalent position exists, the employer is not required to consider the disabled employee over other applicants for the position, especially when the disabled employee has not even applied for the job. An employer has no obligation to afford a disabled employee who has been laid off a greater right to a position that another non-disabled applicant for the position. "The law does not require affirmative action in favor of individuals with disabilities. It merely prohibits employment discrimination against qualified individuals with disabilities, no more and no less." Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1094 (5th Cir. 1996) As with any other individual who had been laid off, Heil did not consider the plaintiff for openings for which the plaintiff

did not apply.[5]  Because the plaintiff did not apply for the available positions, he is unable to claim that Heil discriminated against him in not offering those positions to him.

Heil did occasionally consider Culver for a position,[6] such as painter, welder or truck driver, but determined each time that Culver's restrictions did not permit employment in the position.  The plaintiff does not raise any clear dispute other than that Heil's decision not to employ him in one of these positions resulted from an overly cautious reading of the restrictions placed on him.  An employer is permitted to be cautious in determining to what tasks a disabled employee should be assigned.  Assignment of an employee to a position in which the employee's limitations might be exceeded, causing aggravation of the impairment or a danger to the employee or others, is reasonably to be avoided by the employer, not only due to fear of litigation from injured parties but also out of concern for its employees' well being.  No reasonable trier of fact could find Heil's cautious attitude toward reassignment unjustified or the result of any discrimination.

Culver argues that he was qualified to return to the receiving clerk helper position.  The plaintiff does not dispute that he was unable to perform an essential function of the job, i.e., lifting, but instead claims that Heil was required to provide him with a reasonable accommodation that would permit him to perform the receiving clerk helper work.

> [A] qualified individual with a disability may be unlawfully discriminated against because of the individual's disability when the individual's employer does not reasonably accommodate the disability — unless such an accommodation would impose an undue hardship on the employer.  42 U.S.C. § 12112(b)(5)(A).  Under the ADA, the term "reasonable accommodation" may include, inter alia, "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."  42 U.S.C. § 12111(9)(B).  This list notwithstanding, "[t]he use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires."  Lewis v.

---

[5] Because the plaintiff did not apply for the jobs, Heil could legitimately believe that the plaintiff had no interest in the positions.

[6] The plaintiff does not indicate whether this consideration took place while he was working with Heil in other positions or after he had been laid off.

-11-

>Zilog, Inc., 908 F. Supp. 931, 947 (N.D. Ga. 1995). This is so because the word "reasonable" would be rendered superfluous in the ADA if employers were required in every instance to provide employees "the maximum accommodation or every conceivable accommodation possible." Lewis, 908 F. Supp. at 947; see also Vande Zande v. State of Wis. Dept. of Admin., 851 F. Supp. 353, 360 (W.D. Wis.1994) ("an employee is entitled only to a reasonable accommodation and not to [a] preferred accommodation"), aff'd, 44 F.3d 538 (7th Cir.1995). Stated plainly, under the ADA a qualified individual with a disability is "not entitled to the accommodation of her choice, but only to a reasonable accommodation." Lewis, 908 F. Supp. at 948.
>   Moreover, the burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable. Willis v. Conopco, 108 F.3d 282, 283 (11th Cir.1997).

Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1285-86 (11th Cir. 1997).[7] The plaintiff has taken no steps to demonstrate how the shifting of lifting tasks to another employee is a reasonable accommodation. If anything, the shifting of a task that is one-third to two-thirds of the work required of an employee in the position would mandate the employment of another person to fulfill the lifting requirements. Such an accommodation is hardly reasonable. See Cochrom v. Old Ben Coal Company, 102 F.3d 908, 912 (7th Cir. 1996).

As part of his disability discrimination claim, the plaintiff finally contends that Heil improperly terminated him from "light duty" work. According to the plaintiff, he was not terminated from his light duty employment due to the dissolution of all light duty work by Heil, as Heil placed other employees on "light duty" work after the plaintiff was laid off. An employer "is not required to create light duty jobs to accommodate disabled employees." Turco v. Hoechst Celanese Corp., 101 F.3d at 1094. An employer who is not required to create a light duty job for a disabled employee is certainly not required to maintain indefinitely

---

[7] The opinion Eleventh Circuit Court of Appeals should not be read to require that an employee is required to know what constitutes a reasonable accommodation in requesting assistance of the employer. Clearly, there are aspects of his disability of which the disabled individual has better knowledge than the employer, such as what his limitations are and in what aspects of his performance he will need aid. At the same time, the employer is better informed as to what is a cost-effective and available strategy to combat the difficulty of the disabled employee. Asking the employee to figure out what alternatives exist for it in providing an accommodation asks a little much of the employee who suffers a physical disability and possibly far too much of an individual suffering a mental impairment. The physically impaired employee with no training beyond high school, who is not a lawyer (and, given this court's experience, some lawyers), will not necessarily have the wherewithal to propose an accommodation that is practical or cost-effective. What the employee can provide is a suggestion as to what course of action might be taken. The employer, who has more knowledge can then engage the employee in the task of determining a proper accommodation.

a light duty job for a disabled employee. A interminable light duty position is not a reasonable accommodation for the plaintiff.

Culver argues that he was subjected to disability harassment. Although no Circuit Court has addressed the propriety of disability harassment as a theory of liability under the ADA, several district courts that have considered the issue have conceded the existence of such a claim. This court need not address the propriety of permitting such a claim. Even if it were possible for some disabled employee to state a claim for disability harassment, Culver cannot do so. Culver is not a disabled individual. Although it is not altogether clear that an individual not a member of a protected class is not permitted to bring a hostile environment claim if that individual is subjected to an environment permeated by discriminatory overtones, the plaintiff does not maintain this sort of claim. Instead, the plaintiff argues that he was individually subjected to hostile remarks as a disabled individual, not that remarks directed at others troubled or disturbed him. Not being disabled, nor attempting to prove that he was regarded as disabled, the plaintiff cannot claim to have been the object of a hostile work environment.

RETALIATORY DISCHARGE CLAIM.

Under Alabama law, an employer is prohibited (from retaliating against) an employee "because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits. . . ." Ala. Code § 25-5-11.1. The Alabama Supreme Court has allocated the demonstrative burdens of the parties in a workers' compensation retaliation suit, stating:

> [A]n employee may establish a prima facie case of retaliatory discharge by proving that he was "terminated" because he sought to recover worker's compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the plaintiff must prove that the reason was not true but a pretext for an otherwise impermissible termination.

Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364, 1369 (Ala. 1988). There is no real evidence in the present case to show that the plaintiff was laid off of work because he filed his workers compensation case. The plaintiff was allowed to return to work after he filed his

claim and had, according to his return to work slip, recovered from his back injuries. Consequent to his return to work at Heil, the plaintiff remained employed for almost seventeen months. The amount of time between the plaintiff's filing of a claim and his being later laid off is too attenuated to support an inference of retaliation.

BREACH OF CONTRACT.

The plaintiff complains that his contract with Heil was breached when he was laid off for none of the reasons for termination enumerated in the employee handbook. The defendant points to a disclaimer in the employment handbook that indicates that Culver's employment was terminable at-will.

The employee handbook states:

> This handbook and the policies contained in it do not in any way constitute, and you should not interpret it as, a contract of employment between the employer and the employee, or promise of employment, or a guarantee of employment for any specific duration. As an employee of Heil, you have the right to end you employment at any time. Heil retains that same right, regardless of any other Company documents or oral or written statements issued by any Company representative.

The plaintiff's employment contract was terminable at-will. Therefore, the termination of his employment was not a breach of his employment contract. See Hoffman-LaRoche, Inc. v. Campbell, 512 So.2d 725 (Ala. 1987).

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment will be GRANTED. This cause will be DISMISSED, with prejudice.

This ___ day of November 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE